UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:15-cv-62116-FAM

CALVIN REID and MAMIE REID,
co-Personal Representatives of the
ESTATE OF CALVON ANDRE REID,

    Plaintiffs,
vs.

CITY OF COCONUT CREEK,
SGT. DAVID FREEMAN,
SGT. DARREN KARP,
OFC. THOMAS EISENRING, and
OFC. DANIEL RUSH,

    Defendant,
_____/

## SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND[1]

(filed as of right *and* with the agreement of Defendants under Federal Rule of Civil Procedure 15)

Plaintiffs, Calvin Reid and Mamie Reid, co-Personal Representatives of the Estate of Calvon Andre Reid (known as "Andre Reid"), sue Defendants, City of Coconut Creek (the "City"), Sgt. David Freeman ("Sgt. Freeman"), Sgt. Darren Karp ("Sgt. Karp"), Ofc. Thomas Eisenring (Ofc. Eisenring"), and Ofc. Daniel Rush ("Ofc. Rush"), and state:

### Introduction

1. This case involves the tragic killing of an unarmed African American man by law enforcement officers. The weapons used were Tasers. Officers of the Coconut Creek Police Department held, beat, and repeatedly tased 39-year-old Andre Reid, causing his death, which

---

[1] The Court's Scheduling Order Setting Trial (DE 6) includes a November 3 deadline to join additional parties or to amend pleadings. The parties have agreed to extend this deadline to December 3, and Plaintiffs would certainly prefer to at least have the Rule 26 initial disclosures before making final decisions on pleading amendments. But the Court has not yet approved the extended deadline. This Second Amended Complaint is filed, in an abundance of caution, to meet the November 3 deadline. Plaintiffs ask that, if the deadline included in the Joint Scheduling Report is adopted, they be given until December 3 to determine whether further amendments are appropriate.

has been declared a homicide.  Three officers involved in this homicide -- consistent with the widespread practice of the Coconut Creek Police Department -- violated state law that mandated regular training in the use of a Taser.  They then used their Tasers in clear violation of the proper procedures.  Had these law enforcement officers been required by the Coconut Creek Police Department to obtain and observe the legally-mandated training, and had they respected the constitutional rights of a man peacefully asking for help, then Andre Reid, a beloved son and the father of two boys, would be alive today.

## Preliminary Matters

2. This is a cause of action for damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of costs, interest, and attorney's fees.

3. Calvin Reid and Mamie Reid are the parents of Andre Reid and have been appointed co-Personal Representatives of his Estate through an order entered by the Broward County Circuit Court.

4. At the time of his death, Andre Reid resided in Broward County, Florida.

5. The City is a political subdivision of the State of Florida located within Broward County, Florida.  The Coconut Creek Police Department is a department of the City.

6. At all material times, Sgt. Freeman, Sgt. Karp, Ofc. Eisenring, and Ofc. Rush were employed as police officers with the Coconut Creek Police Department, acting within the course and scope of their employment.  Each resided in Broward County, Florida.

7. The acts at issue were committed, the death of Andre Reid occurred, and the causes of action arose in Broward County, Florida.

8. All conditions precedent to suit have occurred, been performed, been waived, or been excused, specifically including full compliance with the presuit notice requirements of Florida Statute 768.28.

9. Plaintiffs have retained the undersigned attorneys to prosecute this action on their behalf and have agreed to pay them a reasonable fee and to reimburse the costs of this action.

## Background Allegations

*Coconut Creek Police Department: A Widespread Disregard for State Law*

10. As of February 22, 2015, Police Chief Michael Mann was the policymaker for the Coconut Creek Police Department on matters of law enforcement, including compliance with all Florida Statutes that regulate or govern police conduct.

11. Section 943.1717(5) of the Florida Statutes mandates annual Taser training:

> (5) After completing the basic skills course, each law enforcement, correctional, and correctional probation officer who is authorized by his or her agency to use a dart-firing stun gun ***must complete an annual training course on the use of dart-firing stun guns***. The annual training course on the use of dart-firing stun guns must be a minimum of 1 hour duration.

(Emphasis added).

12. As of February 22, 2015, the Coconut Creek Police Department employed nearly 100 sworn law enforcement officers. Over 80 of them, including then-Police Chief Mann, were not current on their Taser certifications, having failed to comply with section 943.1717(5).

13. Specifically, Sgt. Freeman had received just one Taser certification, on August 8, 2006. He had been in violation of section 943.1717(5) for more than seven years on the night that Andre Reid was killed. Sgt. Karp had last received a Taser certification on March 1, 2006, so he, too, had been in violation of state law for more than seven years. Ofc. Rush was certified

on May 8, 2013, so he had been in violation of section 943.1717(5) for nearly a year. Ofc. Eisenring was certified on March 27, 2014, so his certification was due to expire the month after Andre Reid was killed.

14. After Andre Reid was killed through police misuse of Tasers (as described below), the Coconut Creek Police Department, at the direction of Chief Mann, attempted to re-certify its officers after the fact and then mislead the press and public concerning their certification status at the time of the killing.

15. These actions of the Coconut Creek Police Department reflect both an awareness that they had violated the mandate of state law and a willingness, at the highest level, to conceal their violations.

16. The officers' failure to comply with statutorily-mandated Taser training was known, was condoned by, and reflected an unwritten policy, custom, or practice of, the Coconut Creek Police Department.

17. Moreover, the fact that four officers, including two veteran supervisors, acted in concert, with no one voicing any dissent as Andre Reid was killed, reflects a police department run amok.

*The Death of Andre Reid: Homicide by Taser*

18. In the early morning of February 22, 2015, Andre Reid approached Perry Weiss in the parking lot of the Wynmoor Village retirement community, a predominantly white neighborhood. Andre Reid did not look or act injured, but his shirt and pants were partially torn. Andre Reid was calm, polite, and non-aggressive. He did not seem upset or agitated. Andre

Reid asked if Mr. Weiss could take him to the hospital. When Mr. Weiss said that he could not, Andre Reid asked whether he would call 911. Mr. Weiss agreed and called 911.

19. Paramedics responded to Wyndmoor Village. Subsequently, so did four Coconut Creek Police Officers: Sgt. Freeman, Sgt. Karp, Ofc. Eisenring, and Ofc. Rush.

20. At no time was Andre Reid threatening, aggressive, or disrespectful toward the police. Nonetheless, police acted on the baseless assumption that a black man in a white neighborhood late at night must be doing something illegal. The officers detained Andre Reid, held him against his will, threatened him, beat him, tased him, and drove him to the ground.

21. The violent overreaction was based, at least in material part, on the color of Andre Reid's skin. Simply put, this death would not have happened if Andre Reid had been a white man.

22. At the very least, the officers, having decided to go to Wyndmoor Village and approach Andre Reid, negligently escalated the situation by creating an overly aggressive and confrontational encounter, by failing to perform an appropriate risk assessment, and by failing to use less-lethal alternatives before deploying Tasers in the manner described below which directly led to Andre Reid's death.

23. The commotion caused by the officers attracted the attention of Wyndmoor Village residents, who looked outside and saw police officers holding Andre Reid face down in the grass, with a knee in his back and zip ties binding his wrists together. One of the officers kicked Andre Reid in the upper body. An officer was heard to yell, "I'll break your f***ing arm!" Andre Reid, in turn, yelled out, "Help, they are going to kill me!"

24. The officers lifted Andre Reid up from the ground and stood him on his feet. Two officers proceeded to tase him again, this time with simultaneous shots in the chest. The other officers then threw Andre Reid back down on the ground. As they pushed his face into the grass, Andre Reid screamed, "I can't breathe, I can't breathe."

25. A few minutes later, one of the officers observed that Andre Reid was not breathing. The officers rolled Andre Reid onto his back. The paramedics attempted CPR, but Andre Reid did not respond. He was loaded into an ambulance and taken to Northwest Medical Center in Margate.

26. Andre Reid died in the hospital two days later, as a result of the Taser-related injuries inflicted by the officers.

27. The Certification of Death issued by the State of Florida Bureau of Vital Statistics, as certified by the Broward County Associate Medical Examiner, identifies the Manner of Death as "HOMICIDE" and the Cause of Death as "COMPLICATIONS OF AN ELECTRO-MUSCULAR DISRUPTION DEVICE," which is the formal description of a Taser.

*The Police "Investigation," Ratification, and Deliberate Indifference*

28. Following Andre Reid's death, the Coconut Creek Police Department conducted an intentionally inadequate investigation into their officers' conduct. Indeed, the Department initially conducted no investigation at all. Witnesses to the beating and killing of Andre Reid were not even interviewed until more than five days after the incident. Coconut Creek officials refused to acknowledge that the incident had even occurred. When a Coconut Creek Police Officer called Andre Reid's roommate, the officer stated that Andre Reid had been found in a field, beaten up and in a coma -- a knowingly false statement.

29. The Coconut Creek Police Department's plan to whitewash the homicide committed by its officers was foiled by the media, which reported Andre Reid's death and began its own efforts to speak with witnesses. The undersigned counsel likewise contacted witnesses to the beating and killing and requested public records.

30. Chief Mann first spoke publicly about the beating and tasing of Andre Reid more than a week after it happened. When doing so, Chief Mann falsely reported that Andre Reid was threatening toward the officers. He then defended his officers' actions, stating that the Taser use was "necessary for the officers' safety as well as for Mr. Reid's own safety."

31. Consistent with Chief Mann's public declaration of support for his police officers, which was made without any reasonable investigation and in direct contradiction of what the witnesses have reported, the Coconut Creek Police Department determined that its officers did nothing wrong in their treatment of Andre Reid, thereby ratifying the gross misconduct of the four officers involved and reflecting deliberate indifference to constitutional rights violations

32. None of the four officers was suspended, or subjected to any form of discipline, as a result of the incident, thereby further ratifying their gross misconduct.

33. The response of the Coconut Creek Police Department to the beating and killing of Andre Reid reflects, and perpetuates, an existing policy of rubber-stamping officers' use of excessive force, which has included (a) the prior use of excessive force by the four officers named herein and others, and (b) the prior inappropriate use of Tasers, with episodes of multiple tasings and tasings to the chest, by numerous untrained and improperly trained officers throughout the Coconut Creek Police Department.

*A Family's Loss*

34.     Andre Reid was born in Greenville, South Carolina, on September 14, 1975, the first child of Calvin and Mamie Reid.  From childhood until the day he was killed, Andre Reid was an outgoing and friendly person.

35.     Andre Reid graduated from high school in Greenville and attended college.  But he then met a man who offered him a job selling meat.  Andre Reid took the job and eventually moved to Atlanta, Georgia.  He then moved, with the business, to South Florida roughly six years ago.  The business did well, and Andre Reid was a very successful salesman.

36.     Andre Reid remained in close contact with his parents, calling or texting almost every day.  He also came home to South Carolina in the summer and on holidays.

37.     Andre Reid fathered two sons, Christian Blake Cooper (born in 1999) and Zion Gabriel Reid (born in 2003).  Though the boys did not live with him, Andre Reid recognized a responsibility for their support, supported them, stayed in touch with them, and had a solid relationship with them.

38.     Andre Reid's survivors, as that term is defined in the Florida Wrongful Death Act, include his parents, Calvin and Mamie Reid, and his two minor children, Christian and Zion.  As a direct and proximate result of Andre Reid's death, Christian and Zion have suffered damages including the loss of parental companionship, instruction, and guidance, mental pain and suffering, and the loss of support and services.  Calvin and Mamie Reid have suffered mental pain and suffering, as well as the loss of support and services.  The Estate of Andre Reid has incurred the loss of earnings and net accumulations, as well as medical, funeral, and burial expenses.

## COUNT I – CIVIL RIGHTS VIOLATIONS
### (v. Officers Individually)

39. Plaintiffs incorporate paragraphs 2 through 38 by reference.

40. The actions of Sgt. Freeman, Sgt. Karp, Ofc. Eisenring, and Ofc. Rush during their encounter with Andre Reid occurred within the scope of their employment as police officers for the City and under color of state law.

41. Each officer participated in illegally detaining, beating, and tasing Andre Reid without any objective basis to be in fear for his safety or the safety of others or any other reasonable justification for his actions, and likewise permitted his fellow officers to do the same.

42. Their actions were motivated, at least in part, by racial animus.

43. Sgt. Freeman and Sgt. Karp had supervisory responsibility at the scene. They both personally participated in, and failed to intervene to stop, the constitutional violations.

44. These officers knew or should have known that their individual and collective conduct violated Andre Reid's clearly established civil rights under the Fourth, Eighth, and Fourteenth Amendments.

45. Any reasonable officer would be aware that this conduct violated Andre Reid's civil rights.

46. The law prohibiting such conduct as unconstitutional was clearly established at the time.

47. As a direct and proximate result of Defendants' violations of Andre Reid's civil rights, Andre Reid suffered physical injury, pain, suffering, emotional distress, disability, and death.

WHEREFORE, Plaintiffs demand judgment against Sgt. Freeman, Sgt. Karp, Ofc. Eisenring, and Ofc. Rush, jointly and severally, for all sums recoverable for a violation of 42 U.S.C. § 1983 causing injury and death, including compensatory damages, punitive damages, costs, interest, attorneys' fees pursuant to 42 U.S.C. § 1988, the damages identified in paragraph 38, and such further relief as may be appropriate.

## COUNT II – 42 U.S.C. § 1983 CIVIL RIGHTS VIOLATIONS
(v. City)

48. Plaintiffs incorporate paragraphs 2 through 38 and 40 through 47 by reference.

49. At all times material hereto, the City was responsible for the Coconut Creek Police Department, its agents and employees, including supervising, overseeing, training and establishing policies, customs, and procedures to conform their conduct to law. Its final policymaker on these matters was Chief Mann.

50. Section 943.1717(5) of the Florida Statutes reflects a recognition of the ongoing need to train law enforcement officers in the proper use of a Taser.

51. The City adopted a policy, practice, and custom of deliberate indifference and a conscious disregard for the state law, for the need to train its law enforcement officers in the proper use of a Taser, for the public danger created by ignoring the mandated training, for prior uses of excessive force by the officers involved herein and others, and for the prior misuse of Tasers by numerous officers.

52. Officers of the Coconut Creek Police Department used their Tasers on Andre Reid in a manner that violated the manufacturer's specifications and violated the training that would and should have been received. Specifically, the officers tased Andre Reid in the chest, tased him in conjunction with battering him, and tased him simultaneously with multiple stun guns.

53. The use of Taser force was unnecessary, improper, excessive, grossly unreasonable, and, ultimately, the cause of Andre Reid's death.

54. The fact that four officers, including two veteran supervisors, acted in concert, with no one voicing any dissent as Andre Reid was killed, reflects that their actions were consistent with pre-existing departmental policy, practice, or custom.

55. As a direct and proximate result of the City's policy, practice, and custom of ignoring state law, failing to train its officers in the proper use of a Taser, and tolerating uses of excessive force and improper uses of the Taser, Andre Reid was killed.

56. Moreover, by intentionally failing and refusing to properly investigate the violations of Andre Reid's rights, and making public declarations of support for the officers without having conducted any meaningful investigation, the City, through Chief Mann, ratified, condoned, and consented to the unlawful conduct and Fourth, Eighth, and Fourteenth Amendment violations committed by Sgt. Freeman, Sgt. Karp, Ofc. Eisenring, and Ofc. Rush. Chief Mann approved his subordinates' decisions and the bases for them.

57. The Coconut Creek Police Department thereafter completed its criminal "investigation" and fully exonerated the officers, all of whom have been returned to the Road Patrol Division with no imposition of discipline.

58. Through its adoption of the policies, practices, and customs described herein, and through its acts of ratification and approval, the City is liable, under 42 U.S.C. § 1983, for the officers' constitutional violations.

WHEREFORE, Plaintiffs demand judgment against the City for all sums recoverable for a violation of 42 U.S.C. § 1983 causing injury and death, including compensatory damages,

costs, interest, attorneys' fees pursuant to 42 U.S.C. § 1988, the damages identified in paragraph 38, and such further relief as may be appropriate.

### COUNT III - Wrongful Death
### (v. City - Vicarious Liability)

59. Plaintiffs incorporate paragraphs 2 through 38 by reference.

60. The wrongful act or negligence of Sgt. Freeman, Sgt. Karp, Ofc. Eisenring, and/or Ofc. Rush, as described herein, was a direct and proximate cause of the death of Andre Reid.

61. Each of these officers was acting in the scope of his employment.

62. These officers did not act in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

63. Pursuant to Florida Statute 768.28(9), the City is vicariously liable, but the officers are not personally liable, for the wrongful death of Andre Reid.

WHEREFORE, Plaintiffs demand judgment against the City for all sums recoverable under the Florida Wrongful Death Act, including damages for the losses identified in paragraph 38, costs, interest, and such further relief as may be appropriate.

### COUNT IV - Assault and Battery
### (v. City - Vicarious Liability)

64. Plaintiffs incorporate paragraphs 2 through 38 by reference.

65. Andre Reid suffered numerous harmful and offensive contacts, during his encounter with the Coconut Creek Police Department officers on or about February 22, 2015, that did not cause his death.

66. Andre Reid was also placed in reasonable fear of imminent peril.

67. Each officer who assaulted and/or battered Andre Reid was acting in the scope of his employment.

68. The officers did not act in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

69. Pursuant to Florida Statute 768.28(9), the City is vicariously liable, but the officers are not personally liable, for assault and battery of Andre Reid.

70. As a direct and proximate result of the acts of assault and battery, Andre Reid suffered damages, including bodily injury, pain and suffering, disability, disfigurement, mental anguish, emotional distress, humiliation, embarrassment, and loss of capacity of the enjoyment of life.

WHEREFORE, Plaintiffs demand judgment against the City for all sums recoverable for assault and battery, including compensatory damages, costs, interest, and such further relief as may be appropriate.

## COUNT V - False Arrest/False Imprisonment
### (v. City - Vicarious Liability)

71. Plaintiffs incorporate paragraphs 2 through 38 by reference.

72. Andre Reid was unreasonably and unlawfully restrained and deprived of his liberty, without his consent, against his will, and without legal authority.

73. Each officer who falsely arrested and imprisoned Andre Reid was acting in the scope of his employment.

74. The officers did not act in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

75. Pursuant to Florida Statute 768.28(9), the City is vicariously liable, but the officers are not personally liable, for the false arrest/false imprisonment of Andre Reid.

76. As a direct and proximate result of the acts of false arrest and false imprisonment, Andre Reid suffered damages, including bodily injury, pain and suffering, disability, disfigurement, mental anguish, emotional distress, humiliation, embarrassment, loss of capacity of the enjoyment of life, and loss of liberty.

WHEREFORE, Plaintiffs demand judgment against the City for all sums recoverable for false arrest and false imprisonment, including compensatory damages, costs, interest, and such further relief as may be appropriate.

### COUNT VI - Negligent Supervision and Training
### (v. City - Direct Liability)

77. Plaintiffs incorporate paragraphs 2 through 76 by reference.

78. The City owes a legal duty to supervise officers with the Coconut Creek Police Department, retain only those fit for duty, and provide reasonably necessary and appropriate discipline, training, and retraining.

79. Based upon the clear dictates of state law, the officers' own prior history, and the Department's history with Taser use and abuse, the City owed a duty to properly supervise and train Sgt. Freeman, Sgt. Karp, Ofc. Eisenring, and/or Ofc. Rush in matters relating to the use of force and, specifically, use of a Taser.

80. The City breached its duty (and violated state law) by failing to properly supervise and train the officers in these matters.

81. As a direct and proximate result of the City's negligent supervision and training of Sgt. Freeman, Sgt. Karp, Ofc. Eisenring, and/or Ofc. Rush, Reid was subjected to civil rights violations, pre-death injury, and ultimately death, as described above.

WHEREFORE, Plaintiffs demands judgment against the City for all sums recoverable under the Florida Wrongful Death Act, including damages for the losses identified in paragraph 38, costs, interest, plus compensatory damages for the pre-death injuries described herein, and such further relief as may be appropriate.

## Demand for Jury Trial

Plaintiffs hereby demand a jury trial on all issues triable by jury.

I HEREBY CERTIFY that, on November 3, 2015, I caused a true and correct copy of the foregoing to be served on all counsel of record by filing an electronic copy with the Court's CM/ECF system, which will send notification of the filing to all counsel of record registered therewith.

/s/ Jack Scarola
Jack Scarola
Florida Bar No.: 169440
Patrick E. Quinlan
Florida Bar No.: 750263
Attorney E-Mails:  jsx@searcylaw.com;
peq@searcylaw.com
Primary E-Mail:  QuinlanTeam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300; Fax:  (561) 383-9451

Jarrett D. Blakeley
Florida Bar No.: 24227
Attorney E-Mail: jarrettblakeley@yahoo.com
Blakeley Law Firm, P.A.
1451 W Cypress Creek Road
Fort Lauderdale, Florida 33309

Attorneys for Plaintiffs